IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES TADLOCK, SCOTT ARNETT, FRED BEYRAU, JOSEPH GOODWIN, AMBER GOODWIN, DARREN HRBEK, CHRIS HURST, ULLON SECHREST, DENISE SECHREST, STEVE SIMPSON, and MYRNA SIMPSON, <br><br> Plaintiffs, <br><br> vs. <br><br> CENTURY SURETY COMPANY, <br><br> Defendant. | Case No. 12-cv-935-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Century Surety Company's ("Century") motion to dismiss (Doc. 3). Plaintiffs filed a response (Doc. 12) to which Century filed a reply (Doc. 14). For the following reasons, the Court grants Century's motion to dismiss.

**FACTS AND PROCEDURAL HISTORY**

The following are the relevant facts as taken from plaintiffs' well-pleaded complaint. Joseph Jones owned a motorcycle shop in Pontoon Beach, Illinois, called Joe's Hawg[1] Doc. On June 14, 2011, Joe's Hawg Doc caught fire destroying plaintiffs' motorcycles stored therein. As a result, plaintiffs sustained substantial losses. James Tadlock's 1934 Harley-Davidson motorcycle was valued at $50,000 and his 1940 Harley-Davidson motorcycle was valued at $42,000. Scott Arnett's motorcycle was valued at $35,000. Fred Beyrau's 1971 Harley-Davidson motorcycle was valued at $14,000. Joseph and Amber Goodwin's 1974 Harley-

---

[1] The word "Hawg" can generally refer to motorcycles; however, it may be used to refer particularly to Harley-Davidson motorcycles. *See Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999) (listing several sources defining "hawg" or "hog" as a motorcycle and discussing the history of the words "hawg" and "hog").

Davidson was valued at $20,000. Chris Hurst's 1989 Harley-Davidson motorcycle was valued at $6,000. Darren Hrbek's 1985 Harley-Davidson motorcycle was valued at $25,000. Ullon and Denise Sechrest's 1975 Harley-Davidson motorcycle was valued at $10,000. Finally, Steve and Myrna Simpson's custom motorcycle was valued at $55,000.

On the date of the fire, Joseph Jones had an insurance policy with Century covering Joe's Hawg Doc. Two portions of that policy are at issue in plaintiffs' complaint. The first relevant portion, Section III – Garagekeepers Coverage, Section (A)(1)(a) and (b), states as follows:

> A. Coverage
> 1. We will pay all sums the "insured" legally must pay as damages for "loss" to a "customer's auto" or "customer's auto" equipment left in the "insured's" care while the "insured" is attending, servicing, repairing, parking or storing it in your "garage operations" under:
>    a. Comprehensive coverage
>       From any cause except:
>          (1) The "customer's auto's" collision with another object; or
>          (2) The "customer's auto's" overturn.
>    b. Specified Causes of Loss Coverage
>       Caused by:
>          (1) Fire, lightening or explosion;
>          (2) Theft; or
>          (3) Mischief or vandalism.

Doc. 2-1, p. 2. The Physical Damage Coverage portion of the policy contained in Section IV, provides as follows:

> A. Coverage
> 1. We will pay for "loss" to a covered "auto" or its equipment under:
>    a. Comprehensive Coverage
>       From any cause except:
>          (1) The "customer's auto's" collision with another object; or
>          (2) The "customer's auto's" overturn.
>    b. Specified Causes of Loss Coverage
>       Caused by:
>          (1) Fire, lightning or explosion;
>          (2) Theft;

2

>    (3) Windstorm, hail or earthquake;
>    (4) Flood;
>    (5) Mischief or vandalism; or
>    (6) The sinking, burning, collision or derailment of any conveyance transporting the covered auto.

Doc. 2-1, pp. 2-3.

Plaintiffs attached a copy of the "Garage Coverage Form Declarations" form as an exhibit to their complaint. That declarations sheet declares as follows: "This policy provides only those coverages where a charge is shown in the premium column below." Doc. 2-1, p. 6. While there is a charge shown in the premium column for "Garagekeepers Comprehensive Coverage," there is no charge shown in the premium column for "Physical Damage Comprehensive Coverage." *See* Doc. 2-1, pp. 6-7.

Plaintiffs maintain they are third-party beneficiaries to the insurance policy between Joseph Jones and Century. Century, however, denied coverage to plaintiffs under this policy. On June 13, 2012, plaintiffs filed their complaint for declaratory judgment in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, asking the Court to declare that the aforementioned policy affords coverage to each of the plaintiffs. Invoking diversity jurisdiction, Century removed this action to the District Court for the Southern District of Illinois on August 23, 2012.

Century filed the instant motion to dismiss on August 29, 2012, alleging this case must be dismissed because plaintiffs are not insureds under the policy and do not qualify as third-party beneficiaries. Accordingly, Century concludes that plaintiffs have no standing to bring suit against Century. As explained below, the Court agrees with Century and grants its motion to dismiss in its entirety.

## ANALYSIS

When considering a Rule 12(b)(6) motion to dismiss, the Court must "construe [the complaint] in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the non-moving] party's favor." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The complaint must "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Generally, the court should only consider the complaint's allegations in ruling on a motion to dismiss. *Centers v. Centennial Morg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). However, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *Id*. (quoting Fed. R. Civ. P. 10(c)). "The Court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quoting 5 Wright & Miller, *Federal Practice & Procedure: Civil 2d*, § 1327 at 766 (1990)).

In Illinois, direct actions against insurers are prohibited by public policy. *In the Matter of Fernstrom Storage and Van Co.*, 938 F.2d 731, 736 n.1 (7th Cir. 1991) (citing *Richardson v. Econ. Fire & Cas. Co.*, 485 N.E.2d 327, 331 (Ill. 1985)). Third parties may only enforce a contract "if and only if the parties made clear in the contract an intention that they be permitted to do so." *A.E.I. Music Network, Inc. v. Bus. Computers, Inc.*, 290 F.3d 952 (7th Cir. 2002) (citing *XL Disposal Corp. v. John Sexton Contractors Co.*, 659 N.E.2d 1312, 1316 (Ill. 1995) ("third-party beneficiary status is a matter of divining whether the contracting parties intended to confer a benefit upon a nonparty to their agreement")). "Illinois has made it very difficult to

prove intent to benefit the third party, because 'there is a strong presumption that parties to a contract intend that the contract's provision apply to *only* them and not to third parties." *Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 334 (7th Cir. 1999) (quoting *155 Harbor Drive Condominium Ass'n v. Harbor Point, Inc.*, 568 N.E.2d 365, 375 (Ill. 1991)).  The policy addressed by this rule is the concern "that the liability of the insured and the liability of the insurer would become intermingled." *See Holmes v. Federal Ins. Co.*, 820 N.E.2d 526, 530 (Ill. App. Ct. 2004).

Plaintiff cites to *Holmes v. Fed. Ins. Co.*, 820 N.E.2d 526 (Ill. App. Ct. 2004), an Illinois appellate court decision, in support of their argument that they have standing to bring suit against Century.  *Holmes* concerned an insurance policy containing a no-fault medical expenses provision that provided the insurer "will pay each person who sustains bodily injury caused by an accident all medical expenses incurred." *Id*. at 530-31.  Accordingly, this portion of the policy did not contain a "no direct action" clause prohibiting "a suit asking for damages from an insured," but rather provided for payment of expenses directly to the injured regardless of the insured's fault. *Id*. at 530.  The Illinois appellate court explained that the insurer's obligation to pay was "not premised on the insurer's indemnification or on the negligence of the policyholder," rather "the insurer's obligation [arose] upon the happening of a defined event." *Id*. at 531.

Here, the Physical Damage Coverage portion of the policy contains a similar no fault provision, which provides that "[the insurer] will pay for 'loss' to a covered 'auto' or its equipment."  Doc. 2-1, p. 3.   This provision may be interpreted to provide for payment directly from Century to a third-party, and is not premised on Century's indemnification or Joseph Jones' (d/b/a Joe's Hawg Doc) negligence.  In its motion to dismiss, Century argued that Joseph Jones

5

(d/b/a Joe's Hawg Doc) did not carry Physical Damage Coverage. Plaintiffs failed to address this argument in their response. With regard to whether Joe's Hawg Doc carried Physical Damage Coverage, the Court has considered the plaintiffs' allegations and the exhibits. According to the "Garage Coverage Form Declarations" sheet attached to plaintiffs' complaint, Joe's Hawg Doc did not carry Physical Damage Coverage because there is no charge listed under the premium column. *See* Doc. 2-1, p. 6. The Court finds that the attached declaration page controls and that Joe's Hawg Doc did not carry Physical Damage Coverage. *See Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) ("to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls"). Accordingly, plaintiffs cannot bring a claim regarding coverage that does not exist.

With respect to the Garagekeepers Coverage, a charge is entered under the premium column on the declarations form, and it appears that Joe's Hawg Doc did maintain this type of coverage. *See* Doc. 2-1, p. 6. The Garagekeepers Coverage, as alleged in the complaint, provides that Century "will pay all sums *the 'insured' legally must pay as damages* for 'loss' to a 'customer's auto' or 'customer's auto' equipment . . . ." Doc. 2-1, p. 2 (emphasis added). Thus, this portion of the policy is premised on Century's indemnification, because Century is only liable to pay once Joseph Jones (d/b/a Joe's Hawg Doc) is legally obligated to pay damages to a customer. Plaintiffs have pointed to no applicable provision of the policy that evidences the intent that this provision of the policy be enforceable by a third party. Further, plaintiffs have not even alleged liability of the insured. Accordingly, as it would be against Illinois public policy, plaintiffs lack standing to bring a claim against Century with respect to the Garagekeepers Coverage portion of the policy between Century and Joseph Jones (d/b/a Joe's Hawg Doc).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Century's motion to dismiss (Doc. 3) and **DISMISSES** the claims against Century.  The Court further **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** November 2, 2012

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
